Curia, per O’Neall, J.
On the first ground of appeal, this Court is entirely satisfied with the ruling of the Judge below : and to his reasoning have only to add what is said by Colcock, J. in Van Holten vs. Lewis and Pepoon, (1 McC. 12): “ This was, in effect,” he said, “ no more than a motion to plead double, which may be granted at any time, so as not to operate a sur-prize on the plaintiffThe remark of the Judge below, very clearly shews that there could be no surprize. Under this ground, the plaintiff, however, made another question, which was, that the defendant’s second plea was bad, and on that ground that the plea ought not to have been allowed. It would, ordinarily, be enough to say, that no such point was presented by the appeal. But as it was argued on both sides, it may be well enough to meet and decide it.
The argument assumed two positions, — 1st. that the plea was bad, in form, concluding to the country, when it should have concluded with a verification : 2d. that it did not specify the *84 particulars in which the defendant proposed to surcharge and falsify the decree of the Ordinary and the Court of Equity.
1st. The plaintiff, instead of simply declaring on the bond, set out the condition, and assigned various breaches. The defendant traversed these breaches, affirming that he had in these particulars performed the condition of the bond. Here there was a direct negative and affirmative, between parties, and although it appears awkward that, in pleading, an issue should be brought about by the plaintiff, in his declaration, making the negative, and the defendant, in his plea, the affirmative, yet it is substantially a good issue between the parties : and Mr. Chitty, (1 Plead. 556) recognizes it as such. The plaintiff has, therefore, nothing to complain of in this respect.
2d. If there be any thing to be complained of under the second plea, it is the plaintiff’s own fault. He might, by setting out specifically the decree of the Ordinary, as one of his breaches, have driven the defendant, in his plea, to the necessity of setting out, as is directed in Davant vs. Webb, (2 Rich. 385,) the particulars in which the defendant wished to correct the decree. But his general breaches have been met by general averments of performance . This was all which the plaintiff could expect. The defendant, however, substantially complied with the rule in Davant vs. Webb, by serving the plaintiff with a notice of the defence of payment to the distributee by Daniel Goin, his co-surety.
So much for these preliminary matters. The 5th ground brings up the real question in this case, — were the decree of the Ordinary, and that of the Court of Equity, on appeal from the same, conclusive on this defendant ?
The 9th sec. of the Act of 1839, (11 Stat. 40,) directs, that where an administrator shall have removed from the State, without having accounted for his administration, the Ordinary may, at the instance of any one interested in the estate, publish in the nearest gaqette, a rule requiring the administrator and his sureties to appear, on a day fixed, and render an account, and cause a copy of the rule to be served on the securities living *85 within the State; and, upon the expiration of the rule, the Ordinary is directed to take an account of the administration, and make a decree therein, as in other cases. The Act declares that, “ the decree, so pronounced, shall have the same force and effect, as well against the sureties on the administration bond, and against the estate of the absent administrator, (if he have any within the State) as if the administrator himself had been ‘personally cited to account.” The 13th section of the same Act, (11 Stat. 42,) permits any person who may think himself aggrieved by the Ordinary’s decree on a matter of account, to appeal to the Court of Equity. The decree of the Ordinary and that in Equity on the appeal, are against Hugh Goin, the absent administrator.
It maybe as well, in order to construe correctly the 9th section, to ascertain what was the evil it intended to remedy. The law was well settled, that until the accounts of an administrator could be legally settled, and a sum ascertained by the decree of the Ordinary, or Court of Equity, for distribution, no suit could be sustained on the administration bond. In a case like the present, the Ordinary could not, before the Act of 1839, take the first step to make the sureties liable. He could not by any process cite the administrator absent from the State to account. Buckner vs. Archer, (1 McM. 85). So, too, even the Court of Equity could not proceed against an absent administrator, who had no property in the State, and a decree pronounced against him under a rule, would not support an action against the sureties. Lesterjette vs. Executors of Ford, (1 McM. 86, note). It was to meet this state of things that the Act was passed; and thus seeing the evil it was to meet, we know it was merely intended to enable the Ordinary to make a decree, which could be used, as evidence, to charge the sureties of an absent administrator, on the bond. The Act, itself, in terms, sustains this construction, when it declares that the decree shall have the same force and effect against sureties, “ as if the administrator himself had been cited.” If he had been so cited, what effect would the decree have had ? The case of Norton vs. Wallace, (1 *86 Rich. 507,) fully adjudged, that the decree, when the administrator was cited, was only prima facie evidence against the sureties. It is very true, that decision was against my opinion, but after the Court of Errors passed upon the question, it was my duty to enforce their judgment. In the same case, (2 Rich. 460,) with the concurrence of a majority of my brethren, I held that the Court of Law could not set aside the decree for fraud; that that belonged to the forum (the Court of Equity) pronouncing the decree. In Davant vs. Webb, I attempted to further qualify the rule, by denying that the Court would, at the instance of the surety, review points and principles properly in issue between the parties in Equity. “ It (the rule in Norton vs. Wallace,) only intended (it was added) to allow to him (the surety) the opportunity of making such a defence, on the facts, as the principal might have made, but did not make.”
Under the rule of Norton vs. Wallace, and the modifications which I have noted, the defence in this case was perfectly admissible. The defendant, it is true, stood by, and made for his principal the best defence which he could before the Ordinary, and in Equity. The defence of payment by Daniel Goin, the surety, could not then be got in. Hugh Goin,- the administrator, was on the account. The defence attempted to be made was, that the distributee was paid. Daniel Goin was then so situated he could not have been examined. It was only when this defendant was sued, that by releasing, he became a competent witness to prove the fact of payment.
The decree having only prima facie effect against the defendant, he is allowed to rebut it by any thing which shows that it was erroneously obtained. This is certainly done by the fact, that the party, in whose favor it was made, was fully paid. Indeed, the plaintiff’s attorney, on the circuit, made no objection to the proof of payment. He objected to the schedule of the plaintiff, as that matter had been in evidence before the Chancellor, and bad been held by him, as not sufficient to defeat the plaintiff’s claim. The decree of the Chancellor was not res adjudicata against this defendant. It had no greater effect than the *87 Ordinary’s, of which it was a mere affirmation. The evidence of the schedule, heard by the Ordinary and the Chancellor, standing alone, as it did there, could not have the effect of presuming payment: but when connected with Goin’s evidence, it irresistibly led the mind to conclude, that the plaintiff’s claim here did not exist, in truth and fact, when his schedule was filed, inasmuch as he had been previously paid. The defence was, therefore. I think, admissible and made out.
The other grounds require no comment.
The motion is dismissed.
Evans, Wardlaw, Frost, Withers, and Whitnee, JX concurred.

Motion dismissed.